IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIE MCMULLEN,** | : | **Civil No. 1:21-CV-1446** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THE GARDENS AT WEST SHORE** | : | |
| **and MEADOWS AT WEST SHORE** | : | |
| **FOR NURSING AND** | : | |
| **REHABILITATION, LLC,** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the court is a motion for summary judgment filed by Defendants The Gardens at West Shore and Meadows at West Shore for Nursing and Rehabilitation, LLC (collectively "The Gardens"). (Doc. 17.) For the reasons set forth below, the motion will be granted in part.

## I.   BACKGROUND

This case arises from Plaintiff Willie McMullen's employment by The Gardens as a Certified Nursing Assistant ("CNA"). (Doc. 19 ¶¶ 4–5.) McMullen worked at the companies' nursing and rehabilitation facility, where he provided everyday care to residents, including assistance with bathing, feeding, dressing, and transferring residents between their bed and wheelchair. (*Id.* ¶ 17.)

On October 21, 2019, while at home, McMullen fractured his ankle, and he underwent surgery the next day. (*Id.* ¶¶ 13–14.) The following week, McMullen

1

applied for and was granted leave under the Family and Medical Leave Act ("FMLA"). (Doc. 19 ¶¶ 15–20, 22; Doc. 19-2 at 122–27.)

On January 3, 2020, McMullen's physician cleared McMullen to return to work, with restrictions. According to Dr. Fernandez, McMullen could work "6–8 hours only as tolerated per day," perform desk work, and "use his walker while being partial weightbearing." (See Doc. 19-2 at 140.)

McMullen testified that on January 7, 2020, he received a call from Robin Hockenberry, The Gardens' Human Resources Director, informing him that his leave was about to expire and requesting a doctor's note for his return. (*Id.* at 81:3–20.) On January 15, 2020, according to McMullen, he provided Hockenberry with the note from his physician, and also asked her permission to use a cane and walking boot at work for comfort. (*See id.* at 80:2–16, 83:4–9, 89:9–19.) Nevertheless, he was not permitted to return to work that day.

On January 20, 2020, McMullen and his union representative met with Hockenberry and Beverly Fry, The Gardens' Regional Director of Operations, to discuss McMullen's return to work. (Doc. 19 ¶ 32; Doc. 19-2 at 84:10–92:8.) In the meeting, McMullen explained that his FMLA leave had concluded and he was ready to return to work with a boot and cane. (Doc. 19-2 at 87:16–24; 89:9–19.) He requested not to be assigned to transfer residents, and that he be permitted to complete "light duty" tasks, such as doing laundry, staffing the reception area, and

providing individualized care to residents. (*Id.* at 145.) Nevertheless, Hockenberry and Fry denied the request, informing McMullen that "light duty assignments were only provided for work-related injuries, no light duty assignments were available for CNAs, and that he could return to work once he was cleared with no restrictions by his physician." (Doc. 19 ¶ 32.)

On January 22, 2020, McMullen and his union representative again met with Hockenberry and Fry. (Doc 19-2 at 92:9–16.) Hockenberry and Fry maintained that McMullen could only return when he was fully healed, and McMullen became upset and said he wanted to file a complaint. (*Id.* at 92:23–11.) After the meeting, McMullen continued to reach out to Hockenberry and Fry to protest the decision and return to work, and they eventually stopped communicating with McMullen. (*Id.* at 105:5–19; Doc. 23-1 ¶ 36.) The Gardens never received a medical clearance for McMullen to return to work without restrictions, and McMullen never returned to work at The Gardens. (Doc. 18 ¶ 19.)

On January 30, 2020, McMullen filed a charge with the Pennsylvania Human Relations Commission, alleging that the Gardens failed to recall him from his FMLA leave, failed to accommodate his disability, and retaliated against him. (Doc. 19-2 at 144–150.) In August 2021, McMullan initiated this action by filing a complaint, which asserts claims for discrimination and retaliation under the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"), as

well as a retaliation claim under the FMLA. (Doc. 1.) The complaint alleges that The

Gardens discriminated against McMullen by failing to accommodate his disability,

and retaliated against him by refusing to reinstate him with accommodations after

his FMLA leave concluded.

The Gardens have filed a motion for summary judgment on all claims. (Doc.

17.) The motion has been fully briefed and is ripe for review.

## II.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to summary judgment as a matter of law."

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is

"material" if it might affect the outcome of the suit under the applicable substantive

law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable

factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a

court "must view the facts in the light most favorable to the non-moving party" and

draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family

YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a

disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party

points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

## III.   **DISCUSSION**

McMullen's discrimination and retaliation claims are each governed by the three-step *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1974); *Shaner v. Synthes*, 204 F.3d 494, 500 (3d

Cir. 2000) (ADA discrimination and retaliation claims); *Mara v. Philadelphia Hous.*

*Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (PHRA discrimination and retaliation

claims); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir.

2012) (FMLA retaliation claim). Under this framework:

> First, the plaintiff must establish a prima facie case of discrimination.
> If the plaintiff succeeds in establishing a prima facie case, the burden
> shifts to the defendant "to articulate some legitimate, nondiscriminatory
> reason for the employee's rejection." [*McDonnell Douglas*, 411 U.S. at
> 802, 93 S.Ct. at 1824.] Finally, should the defendant carry this burden,
> the plaintiff then must have an opportunity to prove by a preponderance
> of the evidence that the legitimate reasons offered by the defendant
> were not its true reasons, but were a pretext for discrimination.

*Shaner*, 204 F.3d at 500–01 (quoting *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410

(3d Cir. 1999)).

### A. The Gardens are not entitled to summary judgment on McMullen's ADA discrimination claim.[1]

The ADA requires employers to provide certain reasonable accommodations

to qualified employees with disabilities. The Third Circuit has described the

statutory scheme as follows:

> The ADA specifically provides that an employer "discriminates"
> against a qualified individual with a disability when the employer does
> not "'mak[e] reasonable accommodations to the known physical or
> mental limitations of the individual unless the [employer] can
> demonstrate that the accommodation would impose an undue hardship

---

[1] Because the Third Circuit has affirmed that claims under the ADA and the PHRA may be
analyzed conterminously, and since the parties have not argued any relevant distinctions, the
court's determination of McMullen's ADA claims will likewise apply to his PHRA claims. *See
Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010).

on the operation of the business of the [employer].'" . . . "Reasonable accommodation" further "includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith" . . . under what has been termed a duty to engage in the "interactive process."

*Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004) (internal citations omitted).

"[F]ailure to engage in the interactive process, in itself, does not constitute" a violation of the ADA. *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 194 (3d Cir. 2009). However, an employee can establish an employer's breach of its duty to provide reasonable accommodations by failing to engage in the interactive process when: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 319–20 (3d Cir. 1999). For the reasons explained below, The Gardens are not entitled to summary judgment because McMullen has adduced evidence to support his prima facie claim, and they have failed to assert a legitimate, nondiscriminatory reason for their action.

**1.  A reasonable jury could find that The Gardens knew McMullen had a disability.**

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment" unless the perceived impairment is "transitory and minor" with "an actual or expected duration of 6 months or less."  42 U.S.C. §§ 12102(1), (3)(B). "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). The statute requires the definition of disability to "be construed in favor of broad coverage . . . to the maximum extent permitted by the terms of this chapter." *Id.* § 12102(4)(A). It further provides that "the determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures" such as medication, medical supplies, or mobility devices. *Id.* § 12102(4)(E). Furthermore, the relevant inquiry is whether the disability existed at the time of the alleged discrimination. *Sever v. Henderson*, 381 F. Supp. 2d 405, 416 (M.D. Pa. 2005), *aff'd*, 220 F. App'x 159 (3d Cir. 2007).

The ADA's broad definition of disability is further supported by the regulations. *See* 29 C.F.R. § 1630.2(j)(1)(iii) ("The threshold issue of whether an

impairment 'substantially limits' a major life activity should not demand extensive analysis"); *id.* § 1630.2(j)(1)(ii) (A "substantial limitation" is measured "as compared to most people in the general population" and "need not prevent, or significantly or severely restrict, the individual from performing a major life activity."); *id.* § 1630.2(j)(1)(ii) ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.").

Here, McMullen has adduced sufficient evidence to support that, when he attempted to return from work, he was suffering from an ankle injury that substantially limited, as compared to others, his ability to perform numerous major life activities. McMullen testified that at the time, he was using a walking boot and cane, and that he provided The Gardens with a note from his doctor imposing substantial restrictions on his activities, including limiting him to six to eight hours of desk work per day "only as tolerated," and requiring him to use a walker while partial weightbearing. (*See* Doc. 19-2 at 140*; id.* at 80:2–16, 89:9–19; *see also* Doc. 19 ¶ 31.) McMullen's restrictions and need for multiple assisted devices suggest he was having considerable difficulty performing the major life activities of walking, standing, and lifting. His limitations were open-ended with no definitive end date, representing the knock-on effects of a severe ankle fracture and surgery which had necessitated a lengthy leave of absence. Considering this evidence, and mindful of

the ADA's dictate that the definition of disability be broadly construed, the record supports a finding that McMullen suffered from a disability that was known by The Gardens. *See* 42 U.S.C. § 12102(4)(A); *see also Myatt v. Vill.*, No. 19-CV-130, 2019 WL 2288116 *3 (E.D. Pa. May 29, 2019) (finding that the plaintiff adequately alleged a disability where her hand injury "substantially limited her ability to grasp and grip objects, and lift more than ten pounds" for four months); *Canfield v. Movie Tavern*, Inc., No. 13-CV-3484, 2013 WL 6506320, at *4–5 (E.D. Pa. Dec. 12, 2013) (finding that the plaintiff adequately alleged a disability where his doctor restricted him from bending, twisting, and lifting over ten pounds at work for two months).

### 2. A reasonable jury could find that McMullen could have been reasonably accommodated.

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show, inter alia, that [he] is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010). A reasonable accommodation may include job restructuring or reassignment to an open position. *Supinski v. United Parcel Serv., Inc.*, 413 F. App'x 536, 542 (3d Cir. 2011) (citing 42 U.S.C. § 12111(9)(B)). "An employer may be required to restructure a job by reallocating or redistributing nonessential, marginal job functions; however, the employer is not required to reallocate essential functions." *Id.* (quoting 29 C.F.R. pt. 1630, app. 1630.2(o)) (internal quotations omitted); *see also Skerski v. Time Warner*

*Cable Co.*, 257 F.3d 273, 285 n.4 (3d Cir. 2001) ("[E]mployers are not required to accommodate an employee by removing an essential function or restructuring a job so as to avoid it, but, rather, they are to provide an accommodation so as to enable the employee to perform such a function."). While the plaintiff has the burden of showing that he is a qualified individual, the employer "has the burden of showing a particular job function is an essential job function." *Supinski*, 413 F. App'x at 540 (quoting *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007)) (citing *Ward v. Mass. Health Research Inst., Inc.*, 209 F.3d 29, 35 (1st Cir. 2000)). Relevant evidence for assessing whether a job function is essential may include "written job descriptions," the "amount of time spent on the job performing the function," and "the employer's judgment as to which functions are essential." 29 C.F.R. § 1630.2(n)(3).

Here, a factfinder could conclude that The Gardens could have reasonably accommodated McMullen's limitations for returning to work, including his trouble standing for long periods and need of a cane and boot.[2] (Doc. 19-2 at 83:3–13; 91:1–4; 96:7–11.) While the Gardens argue that McMullen was unable, even with these accommodations, to transfer residents, which they contend is an essential function

---

[2] McMullen's PHRC charge indicates that he also requested not to have to transfer residents. (*See* Doc. 19-2 at 145.) Even if his proposed accommodation was not reasonable, however, the request does not excuse The Gardens' obligation to participate in the interactive process or foreclose that a reasonable accommodation could have been reached therein. *See Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 247–48 (3d Cir. 2006) (reversing the jury's finding against the plaintiff on a failure to accommodate claim where the judge improperly instructed that the plaintiff had the burden to identify and request a specific accommodation that was reasonable instead of merely show that he requested an accommodation).

for a CNA (*see* Doc. 20 at 20), fact issues exist as to whether it was truly essential for the task to be performed independently and without assistance. Nothing in the written job description for the position indicates that individuals must be able to transfer residents independently or otherwise lift the full weight of an adult human. Instead, the CNA job description provides that the position comes with only a fifty-pound weightlifting requirement; that in cases of emergency it "[m]ay be necessary" for employees "to assist" in evacuating residents; and that all requirements for the position potentially may be performed "with or without the aid of mechanical devices." (Doc. 19-2 at 115.) Consistent with this description, McMullen provided numerous pieces of testimony to support that CNAs were rarely required to lift people on their own, and that he was capable of carrying out the function with the very same assistance provided to many of his colleagues. McMullen's testimony indicates that prior to his disability, he did not often lift residents singlehandedly, and that it was "common practice" for individuals to work together to accomplish the task (*Id.* at 171:2–172:23). He described specific instances in which he received assistance or provided it to others, including one example of a colleague he helped who was "obviously pregnant and showing" (*id.* at 173:15–16; *see* 172:3–174:4), and he explained that CNAs were always encouraged to obtain the support necessary to lift a resident.  (*Id.* at 171:22–172:2.)

The Gardens' judgment that lifting individuals is an essential function for a CNA is entitled to due consideration. *See* 29 C.F.R. § 1630.2(n)(3). Nevertheless, its viewpoint on the matter must be balanced against evidence suggesting that CNAs need not as a matter of policy, and generally do not as a matter of practice, carry out the function singlehandedly. The requirement in the job description that individuals must be able to lift fifty pounds, viewed in a light most reasonable to McMullen, belies The Gardens' contention that CNAs actually need to lift several times that multiple, in the form of an adult human, in order to carry out their fundamental duties. Considering the availability of human and mechanical assistance in transferring residents, the language of the written job description, and testimony regarding the frequency with which CNAs received assistance transferring residents, a jury could find that The Gardens could have reasonably accommodated McMullen. *See Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d Cir. 1998) (finding a fact issue on whether heavy lifting was an essential function of a nurse notwithstanding a written job description's indication that lifting patients was a major, frequent duty and the employer's argument concerning patient safety); *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 612–13 (3d Cir. 2006) (declining to decide as a matter of law that a function was not essential even though five of the seven factors in 29 C.F.R. § 1630.2(n)(3) favored that conclusion).

### 3. A reasonable jury could find that The Gardens did not engage in good faith with McMullen in the interactive process.

Once an employee has notified the employer of a need for an accommodation, "both parties have a duty to assist in the search for an appropriate reasonable accommodation and to act in good faith." *Colwell*, 602 F.3d at 507 (internal citation omitted). "[T]his process requires the individual assessment of both the particular job at issue, and the specific physical or mental limitations of the particular individual in need of reasonable accommodation." 29 C.F.R. pt. 1630, app. 1630.9. In the interactive process, the employer is required "to take some initiative" and may not simply "sit back passively, offer nothing, and then, in post-termination litigation, try to knock down every specific accommodation as too burdensome." *Taylor*, 184 F.3d at 315. Evidence of an employer's good faith may include meeting with the employee, requesting information about the employee's limitations, showing "some sign of having considered the employee's request," and offering "available alternatives when the request is too burdensome." *Id.* at 317. An employer's failure to communicate may be evidence of bad faith, in which case, "courts should attempt to isolate the cause of the breakdown and then assign responsibility . . . and examine the process as a whole to determine whether the evidence requires a finding that one party's bad faith caused the breakdown." *Colwell*, 602 F.3d at 507 (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805–06 (7th Cir. 2005) (internal citation omitted)).

Here, the record contains sufficient evidence to support a finding that The Gardens fell short of satisfying its obligation to meaningfully engage in the interactive process and assess the essential functions of McMullen's position against his limitations. The evidence indicates that, from the outset, The Gardens adopted a hardline policy that McMullen could not return to work until he was completely healed, and that they did not so much as consider budging from that position. (*See* Doc. 18 ¶¶ 12, 15, 16; Doc. 19-2 at 158; *id.* at 105:5–11.) The Gardens did not engage with the substance of McMullen's requested accommodations, and they failed to identify any potential alternative accommodations or explain how accommodating him would create undue hardship. Against this backdrop, a factfinder could conclude that The Gardens' phone call and meetings held with McMullen on the matter were not good faith, interactive discussions, but mere empty gestures, and that they failed to undertake the kind of individualized assessment required under the statute. *See Hohider*, 574 F.3d at 195 (explaining that when a 100% healed policy "is applied against qualified individuals with disabilities, it would, by its very terms, discriminate against those protected individuals on the basis of their disabilities, systematically denying them the reasonable accommodations to which they are entitled and excluding them from employment for which they are otherwise qualified"); *cf. Rutt v. City of Reading, Pa.*, No. CIV.A. 13-4559, 2014 WL 5390428, at *5 (E.D. Pa. Oct. 22, 2014) (finding that plaintiff

adequately alleged her employer failed to engage in the interactive process in part because of its "100% healed" policy). McMullen has accordingly satisfied his prima facie claim.

### 4. The Gardens have failed to assert a legitimate, nondiscriminatory reason.

Although The Gardens' burden in justifying their action is "relatively light," they have failed to meet it. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Instead, The Gardens assert that they prohibited McMullen from returning until he was fully healed. (Doc. 20 at 26.) In doing so, they rely exclusively on their prima facie arguments that McMullen was not disabled or qualified under the ADA. *See Hohider*, 574 F.3d at 195. Because McMullen has satisfied his prima facie burden on these elements, The Gardens' asserted reason is not nondiscriminatory, and they are not entitled to summary judgment on McMullen's discrimination claims.

### B. The Gardens are entitled to summary judgment on McMullen's FMLA retaliation claim.

FMLA retaliation claims are "rooted in the FMLA regulations," which prohibit an employer from retaliating against an employee "for having exercised or attempted to exercise FMLA rights." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) (quoting 29 C.F.R § 825.220(c)). A prima facie FMLA retaliation claim requires the plaintiff to show that "(1) [he] invoked [his] right to FMLA-qualifying leave, (2) [he] suffered an adverse employment decision, and (3)

the adverse action was causally related to [his] invocation of rights." *Id.* (quoting *Lichtenstein*, 691 F.3d at 302).

Here, McMullen's FMLA claim fails at the first element. McMullen contends that he invoked his FMLA rights by attempting to return to work on January 15, 2020.[3] (*See* Doc. 23-2 at 14.) However, while the FMLA generally entitles an employee on qualifying leave to return to the same or an equivalent position, an employee is not entitled to restoration if he is unable to perform the essential functions of the position. 29 C.F.R. §§ 825.214, 825.216(c). "The FMLA does not require 'an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave.'" *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012) (quoting *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 384 (3d Cir. 2002)). Because there is no dispute that McMullen was unable to perform the essential functions of his job without accommodation, The Gardens were not required to reinstate him from FMLA leave, and their failure to do so cannot serve as the basis for retaliation under the statute. *See Donald v. Se. Pennsylvania Transp. Auth. (SEPTA)*, No. CIV.A. 13-0440, 2014 WL 3746520, at *4 (E.D. Pa. July 29, 2014) (citing *Macfarlan*, 675 F.3d

---

[3] McMullen cannot alternatively establish an FMLA retaliation claim based on his initial request for FMLA leave. Although McMullen engaged in a protected activity by requesting FMLA-qualifying leave, he does not argue, and the record does not support, that his request caused his separation from The Gardens.

at 271). Accordingly, The Gardens' request for summary judgment on this claim will be granted.

### C. The Gardens are entitled to summary judgment on McMullen's ADA retaliation claim. [4]

To establish a retaliation claim under the ADA, the plaintiff must demonstrate: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Williams*, 380 F.3d at 759 (internal citation omitted). To demonstrate an adverse action, the plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, which [in the employment context] means it well might have dissuaded a reasonable worker" from engaging in protected activity. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 67–68, (2006). 548 U.S. at 68 (internal citations omitted).

McMullen cannot do so. While he alleges that The Gardens retaliated against him for requesting an accommodation to return to work, the evidence shows that the company simply denied the request, assured McMullen that he could return when healed, and eventually stopped responding to his protests of that decision. The

---

[4] Like his ADA and PHRA discrimination claims, McMullen's retaliation claims under the same statutes rise and fall together. *See Larochelle v. Wilmac Corp.*, 769 F. App'x 57 (3d Cir. 2019) (citing *Williams*, 380 F.3d at 761 n.6).

Gardens' mere denial of the request could not have been retaliation for the request itself, and their proposal for McMullen to return when completely healed and McMullen's response to the proposal severed any causal connection between his request and eventual separation from the company. *See Moore-Foots v. Bd. of Educ. of the City of Chicago*, 211 F. Supp. 3d 1012, 1037–38 (N.D. Ill. 2016) ("A 'failure to accommodate' cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim."). Accordingly, there is no material dispute of fact that McMullen was not retaliated against for requesting an accommodation, and The Gardens are entitled to summary judgment on his retaliation claims.

## IV.    **CONCLUSION**

For the reasons explained above, The Gardens' motion for summary judgment (Doc. 17) will be granted as to McMullen's retaliation claims and denied as to his discrimination claims. An appropriate order shall follow.


Dated: April 25, 2023


                                        *s/ Sylvia H. Rambo*
                                        SYLVIA H. RAMBO
                                        United States District Judge